**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

JOSEPH FERRANTE,

         Appellant,

        v.

ENVIRONMENTAL PROTECTION
   AGENCY,

         Agency.

DOCKET NUMBER
PH-0752-15-0372-I-2

DATE: April 25, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Lawrence Berger</u>, Esquire, Glen Cove, New York, for the appellant.

<u>Alexandra Meighan</u> and <u>Merrick D. Cosey,</u> Washington, D.C., for the
   agency.

**BEFORE**

Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1      The agency has filed a petition for review of the initial decision, which reversed the appellant's constructive suspension of more than 14 days. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact;

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to clarify the improper agency action that rendered the appellant's leave of absence involuntary and to modify the constructive suspension period, we AFFIRM the initial decision.

## BACKGROUND

¶2      The appellant is employed as a Criminal Investigator, GS-1811-13, with the agency in Edison, New Jersey. *Ferrante v. Environmental Protection Agency*, MSPB Docket No. PH-0752-15-0372-I-2, Appeal File (I-2 AF), Tab 16, Refiled Initial Decision (RID) at 2. The appellant is subject to medical examination whenever there is a question as to his continued ability to meet the medical standards or physical requirements of his law enforcement position. RID at 2; *Ferrante v. Environmental Protection Agency*, MSPB Docket No. PH-0752-15-0372-I-1, Initial Appeal File (IAF), Tab 25 at 131-56.

¶3      On February 13, 2015, the appellant suffered a nonwork-related head injury that resulted in a facial fracture and cognitive impairment and that required emergency surgery and physical therapy. RID at 2; IAF, Tab 25 at 11, 72, 85, 305. On February 17, 2015, the appellant informed his supervisor of his injury and began a period of voluntary sick leave. IAF, Tab 25 at 20. The agency

continued to approve his sick leave from February to April 2015, but requested that he provide sufficient documentation detailing, among other things, how his medical condition affected his ability to perform his duties. IAF, Tab 6 at 20, 22, Tab 25 at 20-22. The appellant provided additional medical documentation. IAF, Tab 25 at 20-21, 25-32, 54, 275-84. The agency found it insufficient to make a determination as to his fitness for duty and on March 17, 2015, ordered him to submit to a Federal Occupational Health (FOH) medical examination. *Id.* at 22. Instead, on March 19, 2015, the appellant provided a note from his treating certified registered nurse practitioner (CRNP) stating that he was unable to work "[d]ue to impaired delayed recall and fatigue" and indicated that he may not use a firearm, among other restrictions. *Id.* at 82, 85. But, on April 13, 2015, after receiving clearance from his CRNP, the appellant requested to return to partial duty on April 15, 2015. *Id.* at 32, 83. The agency declined his request and again ordered him to undergo an FOH exam. *Id.* at 80, 82.

¶4 The appellant scheduled his FOH exam and reported for testing and examination on April 29 and May 12, 2015. RID at 3. On May 28, 2015, the appellant's CRNP cleared him for return to full duty. IAF, Tab 25 at 54. Nonetheless, as indicated in her June 15, 2015 report, the FOH medical review officer (MRO) deferred making a final determination on the appellant's clearance until he provided a report from a board-certified neurologist detailing 14 specific pieces of medical information, including the "Results of a CURRENT neurological and mental status evaluation." IAF, Tab 25 at 11-12, 14-15, 74-75. The appellant did not receive the FOH report until July 9, 2015. RID at 4; IAF, Tab 25 at 302-03. On July 17, 2015, the appellant's treating practitioners forwarded his extant clinical documentation because they believed it to be fully responsive to the FOH request. RID at 4; IAF, Tab 25 at 286, 305. The FOH MRO, however, clarified that the records were only 1 of the 14 items needed and reissued the request for the remaining information. IAF, Tab 25 at 304-06. The appellant then scheduled an appointment with a board-certified neurologist and

obtained the remaining documentation. RID at 4; IAF, Tab 25 at 213, 307-10. The appellant submitted this information to the agency on or about October 2, 2015; FOH cleared him for duty, effective October 14, 2015; the agency informed him of his clearance on Friday, October 16, 2015, and returned him to duty the following Monday, on October 19, 2015. RID at 4-5.

¶5    While the appellant's medical clearance decision was pending, he filed this Board appeal, claiming that the agency's refusal to return him to duty and placement on "[e]nforced [l]eave" constituted a constructive suspension and disability discrimination. IAF, Tab 1 at 5, Tab 23 at 3. The agency asserted that the appellant was not returned to duty because there was a legitimate, outstanding question as to his fitness for duty. IAF, Tab 6 at 7-10. The administrative judge initially dismissed the appeal without prejudice, but automatically refiled the appeal on February 3, 2016. I-2 AF, Tabs 1-2; IAF, Tab 27, Initial Decision at 1-3. After holding the appellant's requested hearing, the administrative judge issued an initial decision finding that the agency constructively suspended the appellant from May 13, 2015, the day after his last FOH exam, to October 16, 2015, the last day of his absence before returning to duty; reversing the constructive suspension because it was effected without minimum due process; and finding unproven the appellant's disability discrimination claim of failure to provide a reasonable accommodation. RID at 5, 13, 16.

¶6    The agency has filed a petition for review. Petition for Review (PFR) File, Tabs 1-2. The appellant has filed a response, to which the agency has replied. PFR File, Tabs 4-5. On petition for review, neither party challenges the administrative judge's findings on the appellant's failure to provide a reasonable accommodation claim. PFR File, Tabs 1-2, 4-5. Accordingly, we focus our discussion on the appellant's constructive suspension claim.

**DISCUSSION OF ARGUMENTS ON REVIEW**

¶7      Although various fact patterns may give rise to an appealable constructive suspension, all constructive suspension claims are premised on the proposition that an apparently voluntary absence actually is not. *Rosario-Fabregas v. Department of the Army*, 122 M.S.P.R. 468, ¶ 8 (2015), *aff'd*, 833 F.3d 1342 (2016). To demonstrate that the absence was not voluntary and is an actionable constructive suspension, an appellant must prove that he lacked a meaningful choice in the matter and that the agency's wrongful actions deprived him of that choice. *Id.* Assuming the jurisdictional requirements of 5 U.S.C. chapter 75 are otherwise met, proof of these two things is sufficient to establish Board jurisdiction. *Id.* This analysis extends to situations when, as here, the agency prevents the appellant's return to work after an initial voluntary absence. *Id.* Our reviewing court has specifically held that the jurisdictional analysis set forth above is appropriate in such cases. *Rosario-Fabregas v. Merit Systems Protection Board*, 833 F.3d 1342, 1346-48 (2016); *Thomas v. Department of the Navy*, 123 M.S.P.R. 628, ¶ 9 (2016).

¶8      On petition for review, the agency does not dispute that the appellant's absence from April 15 until October 16, 2015, was involuntary. PFR File, Tab 1 at 7, Tab 4 at 10. Nevertheless, it argues that the administrative judge erred in finding that the appellant met his burden of proof as to the second prong, i.e., that its wrongful actions deprived the appellant of a meaningful choice. PFR File, Tab 1 at 7. We find that the agency constructively suspended the appellant for the reasons set forth below.

The agency was authorized to order the appellant to report for a FOH exam before returning him to duty.

¶9      Under 5 C.F.R. § 339.301(b)(3) (2015), an agency has the authority to require an employee who occupies a position with physical and medical standards to report for a medical exam whenever there is a direct question about his

continued capacity to meet the physical or medical requirements of his position.[2] Here, the administrative judge correctly found that, while the agency must consider the appellant's provided medical documentation, it need not rely on that information exclusive of an opinion from its own physician. RID at 6-8.

¶10    We further find that the agency's exam order was appropriate because the appellant's medical documentation did not sufficiently resolve the question of his fitness for duty. The appellant's clearances from his treating practitioners did not explain how his medical condition affected his duties, or the reasons and bases for finding that his medical condition had improved since their recommendations that the appellant be excused from his duties. IAF, Tab 25 at 26-32, 54, 85, 256-57; *see Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶¶ 19, 34-35 (2014) (finding that the agency was authorized to order the appellant to report for a fitness-for-duty exam because the provided medical documentation did not adequately explain his Post-Traumatic Stress Disorder (PTSD) medications, provide a history of his medical condition, include a prognosis or diagnosis, or indicate how his PTSD affected his ability to perform his Firefighter position duties); *Calicott v. U.S. Postal Service*, EEOC Appeal No. 01A01169, 2003 WL 21634364, at *2 (July 2, 2003) (finding that the agency had a sufficient basis for ordering a fitness-for-duty exam when the employee's medical documentation lacked relevant facts and information regarding his current medical status). We therefore discern no error in the agency's decision to order the appellant to

---

[2]    The Office of Personnel Management amended 5 C.F.R. part 339, effective March 21, 2017, after the issuance of the March 10, 2017 initial decision. RID at 1; 82 Fed. Reg. 10959-01, 10959 (Feb. 17, 2017). For the purposes of this nonprecedential final order, we apply the 2015 version of the regulations in effect at the time of the appellant's alleged constructive suspension. *See Zajac v. Department of Agriculture*, 112 M.S.P.R. 160, ¶ 5 n.2 (2009). Nonetheless, we would reach the same outcome under either version because the amended regulations do not absolve the agency its obligation to designate an appropriate practitioner and to pay for exams that it orders. *Compare* 5 C.F.R. part 339 (2015), *with* 5 C.F.R. part 339 (2017).

submit to a FOH exam, under 5 C.F.R. § 339.301(b)(3) (2015), to determine his fitness for duty.

The agency failed to fully discharge its obligations under 5 C.F.R. part 339 in effecting the ordered FOH examination.

¶11 The agency argues that, contrary to the administrative judge's findings, it acted appropriately and reasonably in requiring the appellant to submit acceptable medical documentation before permitting him to return to work, given the severity of his injury and the demanding nature of his position. PFR File, Tab 1 at 4, 7-14. While we agree with the administrative judge that the agency acted improperly when it ordered the appellant to obtain and provide a neurological evaluation after the agency had conducted the medical examination, we additionally find that the wrongful action included the agency's requirement that the appellant pay for that evaluation.

¶12 The agency-ordered FOH exam did not include the neurological evaluation at issue. RID at 11-12; IAF, Tab 25 at 259-64. However, early documentation from the appellant's treating practitioners raised a question as to his cognition, which, among other things, affected his ability to operate a firearm. IAF, Tab 25 at 276-84. Thus, given the extent of the appellant's head injuries and the nature of his position, the FOH exam likely should have included that evaluation or referred him for further testing. I-2 AF, Tab 12, Hearing Compact Disc (HCD) at 1:38:10-1:38:45 (testimony of FOH MRO explaining that FOH medical examiner is responsible for conducting appropriate medical exams); IAF, Tab 25 at 264 (exam notes from the FOH examining physician recognizing that the appellant had suffered head trauma, but declining to refer him for further testing); *Archerda*, 121 M.S.P.R. 314, ¶ 21 (stating that an exam ordered pursuant to 5 C.F.R. § 339.301 must be done in conformance with the Equal Employment Opportunity Commission Americans with Disabilities Act regulations, consistent with business necessity, and tailored to its specific concerns regarding the appellant's ability to perform).

¶13    Recognizing the deficiency, the FOH MRO directed the appellant to submit a "CURRENT" neurological and mental status evaluation by a board-certified neurologist. IAF, Tab 25 at 11, 305. The neurological evaluation was a required component of the clearance determination. *Id.* at 11-12, 74-76, 305-06. Rather than merely provide already-obtained medical information describing his diagnosis or prognosis, the appellant was forced to undergo a new exam to fulfill the FOH directive. *Id.* at 307-10. Also, unlike *Rosario-Fabregas*, 122 M.S.P.R. 468, ¶¶ 2-5, 13, wherein, in furtherance of the interactive process, the agency requested additional medical information from the appellant because the supporting information he offered was insufficient to make a determination on his reasonable accommodation request, the FOH MRO's directive was in conjunction with an agency-ordered medical exam and evaluation to determine whether it would permit the appellant to resume his duties in a position with medical standards and physical requirements. We therefore find that, under these facts, the agency effectively ordered the appellant to undergo a medical exam from a private board-certified neurologist.[3]

¶14    Thus, we agree with the administrative judge that the agency did not comply with 5 C.F.R. § 339.303(b), which required it to "designate[] the examining physician," and that this wrongful action deprived the appellant of a meaningful choice. RID at 12. Although the agency contends that it complied with the designation requirement by directing the appellant to "have a board-certified neurologist" complete a "CURRENT neurological and mental status evaluation," PFR File, Tab 1 at 15; IAF, Tab 25 at 11, 305, we disagree. Section 339.303(b) does not indicate that an agency may "designate" an employee's yet unidentified personal physician as the examining physician;

---

[3] The agency argues that under 5 C.F.R. § 339.302, it has the option of offering an exam under certain conditions. However, even if this is a circumstance in which the agency had the authority to offer (or refrain from offering) an exam under that provision, it nonetheless elected to utilize its authority under 5 C.F.R. § 339.301(b)(3) (2015) to order a medical exam.

rather, it provides that the agency must merely "offer" the employee an opportunity to submit medical documentation from the personal physician.

¶15 Moreover, when an agency orders or offers a medical exam, the agency shall pay for the exam. 5 C.F.R. § 339.304 (2015). The evidence in the record does not reflect that the agency made any effort to pay for the new neurological exam.[4] Consequently, we find that the agency also did not comply with the requirements set forth in 5 C.F.R. § 339.304 (2015), and that wrongful action, along with its failure to comply with 5 C.F.R. § 339.303 (2015), deprived the appellant of a meaningful choice.

¶16 As a result, the delay in medically clearing the appellant was attributable to the agency's failure to conduct a sufficient exam and to comply with its obligations under 5 C.F.R. part 339 in ordering and paying for a neurological exam, and not due to the appellant's delay in providing the neurological report. *Cf.* 5 C.F.R. § 339.102(c) (2015) (explaining that "[a]n employee's refusal to be examined in accordance with a *proper* agency order authorized under [5 C.F.R. part 339] is grounds for appropriate disciplinary or adverse action") (emphasis added). We therefore find that the appellant proved that the agency constructively suspended him from June 15, 2015, when the FOH MRO completed her report, to October 16, 2015, the appellant's last day of absence before returning to duty, and that the Board has jurisdiction, under 5 U.S.C. § 7512(2), over that constructive suspension.

---

[4] Moreover, on review, the appellant's representative asserts under penalty of perjury that the agency required the appellant to obtain the neurological evaluation "at his own cost and expense." PFR File, Tab 4 at 3, 12. We consider this new evidence because it implicates the Board's jurisdiction. *See Lovoy v. Department of Health & Human Services*, 94 M.S.P.R. 571, ¶ 30 (2003) (considering new arguments raised on review because the issue of jurisdiction can be raised at any time). Also, the agency does not dispute this evidence. PFR File, Tabs 1, 5; *see Woodall v. Federal Energy Regulatory Commission*, 30 M.S.P.R. 271, 273 (1986) (finding that a declaration subscribed as true under penalty of perjury, if uncontested, proves the facts it asserts).

<u>The administrative judge erred in including the appellant's involuntary absence before June 15, 2015, in the constructive suspension period.</u>

¶17    The agency argues that the administrative judge erred in finding that the delay between the appellant's last FOH appointment on May 13, 2015, and the appellant's receipt of the June 15, 2015 MRO report on July 9, 2015, was unreasonable.  We agree with the agency in part and modify the administrative judge's finding as to when the constructive suspension period began.

¶18    The administrative judge relied on *Sherrod v. Department of the Navy*, 90 M.S.P.R. 347, ¶ 24 (2001), in finding that the delay was unreasonably long.  RID at 11-12.  We find *Sherrod* distinguishable from the instant case.  There, the agency failed to provide any explanation for its nearly 3-month delay between receiving the appellant's request to return to duty and medical information from his private physician and issuing its request for more information.  *Sherrod*, 90 M.S.P.R. 347, ¶ 24.  Here, in contrast, the agency submitted evidence explaining the medical review process and the FOH MRO's actions taken to complete her review, which included reviewing medical documentation from the appellant's private practitioners and the FOH exam information.  HCD at 1:37-1:39:20, 1:48:25-1:48:40 (testimony of FOH MRO); IAF, Tab 25 at 11-12, 74-75.

¶19    We also find the remaining cases relied on by the administrative judge on this issue inapposite.  In *Caballero v. U.S. Postal Service*, 34 M.S.P.R. 263, 266-67 (1987), the Board did not base its finding on the appellant's constructive suspension claim on the length of the agency's delay in rendering a fitness-for-duty determination.  In *Baker v. U.S. Postal Service*, 84 M.S.P.R. 119, ¶¶ 10, 13 (1999), the Board found that the agency constructively suspended the appellant because it failed to comply with its obligations to search for a light-duty assignment within the appellant's restrictions and within the 72-hour time frame mandated by the collective bargaining agreement.  There is no similar provision requiring the agency to return the appellant to work within a specific timeframe in

this case; thus, the Board's unreasonably long delay finding in *Baker* is not applicable. Finally, the administrative judge relied upon *Justice v. Department of the Navy*, 89 M.S.P.R. 379, ¶ 13 (2001), in finding that, although a "brief delay" between a medical examination and a medical clearance determination would not be improper, the Board declines to speculate in these types of cases as to how long a reasonable delay might last. RID at 12 n.10. *Justice*, however, was issued before the Board decided in *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397 (2013), that a finding of wrongful agency action is required for an involuntary absence to constitute a constructive suspension, and therefore, merely held that the appellant's constructive suspension began on the day the agency refused to allow him to return to work when he reported for duty that day. *See Justice*, 89 M.S.P.R. 379, ¶ 13.

¶20        The FOH MRO completed her review of the appellant's medical information 1 month after his last FOH exam. RID at 3; IAF, Tab 25 at 12. We find that this is not an unreasonably long time to conduct such a review and that such a delay does not constitute a wrongful action sufficient to trigger a constructive suspension. *See Campbell v. U.S. Postal Service*, 94 M.S.P.R. 646, ¶¶ 20-21 (2003) (finding no wrongdoing in the agency's nearly 1-month delay between receiving the appellant's clearance from his private physician and issuing its request for medical documentation). Therefore, the appellant has not shown any wrongdoing in the agency's actions from April 15 to June 14, 2015. Accordingly, we find that the appellant was constructively suspended only from June 15, 2015, when the FOH MRO deferred a medical determination pending further documentation, including a neurological and mental status evaluation, until October 16, 2015, the last day of the appellant's absence until his return to duty.

<u>The agency constructively suspended the appellant from June 15 to October 16, 2015, without due process.</u>

¶21    As explained by the administrative judge, RID at 13, minimum due process for depriving a tenured public employee of his property right in his employment entails prior notice and an opportunity to respond. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). An adverse action taken without due process must be reversed. *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681 (1991). Here, the appellant's constructive suspension of more than 14 days must be reversed because the agency failed to provide him with any process before taking that adverse action. *See Mc Lain v. U.S. Postal Service*, 82 M.S.P.R. 526, ¶ 10 (1999) (reversing the appellant's constructive suspension of more than 14 days because it was effected without the procedural protections of 5 U.S.C. § 7513(b), in violation of his constitutional right to minimum due process).

¶22    Accordingly, we find that the agency violated the appellant's constitutional rights by constructively suspending him from June 15 to October 16, 2015, without minimum due process. We therefore affirm the initial decision's reversal of the appellant's constructive suspension, as modified.[5]

## ORDER

¶23    We ORDER the agency to cancel the appellant's constructive suspension from June 15 to October 16, 2015. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

---

[5] The agency also asserted its belief that the administrative judge did not order interim relief. PFR File, Tab 2 at 4-5. As argued, the administrative judge was correct in declining to order interim relief. *See Zygas v. U.S. Postal Service*, 116 M.S.P.R. 397, ¶ 14 (2011) (finding an interim relief award inappropriate in constructive suspension cases when at the time the initial decision is issued, the agency has returned the appellant to paid duty status at the same grade and step occupied prior to his absence).

¶24    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶25    We further ORDER the agency to compensate the appellant for the cost of the neurological examination and evaluation from his private physician that he obtained on or about October 2, 2015.

¶26    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶27    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶28    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the

Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[6]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

(1) **Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                         /s/ for
                                      _____
                                      Jennifer Everling
                                      Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion. Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.